**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| NEW ENGLAND LIFE INSURANCE COMPANY and NEW ENGLAND SECURITIES CORPORATION, | : : | |
| Plaintiffs, | : | CIVIL ACTION NO.: |
| | : | |
| v. | : | |
| | : | |
| ANTHONY ALFIERI, JEFF BONIFACINO, LAURA CREAN, RICHARD HEWITT, ROBERT PORTER, DICK ROCKWELL, DAVID SAUERS, STANLEY SZCZERBA, MARILOU SZYMANSKI, KENNETH SCHLEISES, and AARON TURNER, | : | |
| Defendants. | | |

## COMPLAINT IN EQUITY

Plaintiffs, New England Life Insurance Company and New England Securities Corporation (collectively referenced as "Plaintiffs or New England Financial"), by and through their attorneys, Davis, Bucco & Ardizzi, bring this Complaint in Equity against Defendants Anthony Alfieri, Jeff Bonifacino, Laura Crean, Richard Hewitt, Robert Porter, Richard Rockwell, David Sauers, Stanley Szczerba, Marilou Szymanski and Aaron Turner, (collectively referenced as "Defendants"), and in support thereof hereby aver the following:

1.     Plaintiff New England Life Insurance Company is a Massachusetts corporation engaged in the business of selling insurance and insurance-related products

and maintains its principal place of business at 501 Boylston Street, Boston, Massachusetts 02117.

2.      Plaintiff New England Securities Corporation is a Massachusetts corporation and is the registered broker/dealer for New England Life Insurance Company and maintains its principal place of business at 501 Boylston Street, Boston, Massachusetts 02117.

3.      Defendant Anthony Alfieri is an adult individual and a resident of 733 Taunton Road, Wilmington, Delaware 19803.

4.      Defendant Anthony Alfieri is a former agent of New England Financial's Wilmington, Delaware agency office and is a registered representative who maintnains licenses with, *inter alia*, the State of Delaware and the National Associations of Securities Dealers ("NASD").

5.      Defendant Jeff Bonifacino is an adult individual and a resident of 1405 Broad Run Road, Landenberry, Pennsylvania 19350.

6.      Defendant Jeff Bonifacino is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

7.      Defendant Laura Crean is an adult individual and a resident of P.O. Box 1389, Hockessin, Delaware 19707.

8.      Defendant Laura Crean is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

9.     Defendant Richard Hewitt is an adult individual and a resident of 1100 Lovering Avenue, #102, Wilmington, Delaware 19808.

10.     Defendant Richard Hewitt is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

11.     Defendant Robert Porter is an adult individual and a resident of 8 Blue Rock Road, Wilmington, Delaware 18909.

12.     Defendant Robert Porter is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

13.     Defendant Richard Rockwell is an adult individual and a resident of 1018 Kent Rd., Wilmington, Delaware 19807-2820.

14.     Defendant Richard Rockwell is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

15.     Defendant David Sauers is an adult individual and a resident of 209 Plymouth Road, Wilmington, Delaware 18903.

16.     Defendant David Sauers is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

17.     Defendant Kenneth Schleises is an adult individual and a resident of 1225 Evergreen Road, Wilmington, Delaware 19803.

18.    Defendant Kenneth Schleises is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

19.    Defendant Stanley Szczerba is an adult individual and a resident of 6 Bowie Drive, Wilmington, Delaware 18908.

20.    Defendant Stanley Szczerba is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

21.    Defendant Marilou Szymanski is an adult individual and a resident of 221 Brookline Road, Wilmington, Delaware 18903.

22.    Defendant Marilou Szymanski is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

23.    Defendant Aaron Turner is an adult individual and a resident of 4606 Laura Dr., Wilmington, Delaware 18903.

24.    Defendant Aaron Turner is a former agent with New England Financial's Wilmington, Delaware agency office and is a registered representative who maintains licenses with, *inter alia*, the State of Delaware and NASD.

## JURISDICTION AND VENUE

25.    This Court has jurisdiction pursuant to 28 U.S.C.A. section 1332 (a) (1).

26.    Venue is proper in this District because the transactions and occurrences which gave rise to this Complaint occurred in the State of Delaware.

## BACKGROUND

27.     Plaintiffs incorporate by reference paragraphs 1 through 26 as if fully set forth herein at length.

28.     New England Financial is affiliated with the nation's oldest chartered mutual life insurance company and offers one of the industry's broadest arrays of life insurance and investment products.

29.     New England Financial develops and supports relationships with each of its customers through the use of confidential and proprietary information.

30.     New England Financial's agents and management are entrusted with such confidential and proprietary information in order to effectively serve New England Financial's affiliated agents and customers, and to represent New England Financial products.

31.     To this end, New England Financial expends significant time, expense, and effort to train and assist its sales agents to effectively represent New England Financial's products and services to its customers.

32.     New England Financial also incurs many other expenses related to maintaining and enhancing its goodwill in the insurance and securities industries, and to obtain, maintain, and increase its client base.

33.     In order for New England Financial to protect its affiliated agents and customers, and in consideration for affiliating and training with New England Financial, New England Financial requires all of its managers and agents to enter into non-solicitation contracts.

34.     Defendant Anthony Alfieri became affiliated with New England Financial on or about September 12, 2000.

35.     On or about September 18, 2000, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Anthony Alfieri signed a standard New England Financial Agent's Contract (the "Contract").

36.     Defendant Jeff Bonifacino became affiliated with New England Financial on or about March 13, 1984.

37.     On or about April 17, 1984, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Jeff Bonifacino signed a standard New England Financial Agent's Contract.

38.     Defendant Laura Crean became affiliated with New England Financial on or about March 10, 1986.

39.     On or about April 16, 1986, as a condition of and in consideration for, *inter alia* her employment and training, Defendant Laura Crean signed a standard New England Financial Agent's Contract.

40.     Defendant Richard Hewitt became affiliated with New England Financial on or about August 14, 1984.

41.     On or about August 22, 1984, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Richard Hewitt signed a standard New England Financial Agent's Contract.

42.     Defendant Robert Porter became affiliated with New England Financial on or about December 1, 1994.

43.    On or about December 1, 1994, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Robert Porter signed a standard New England Financial Agent's Contract.

44.    Defendant Richard Rockwell became affiliated with New England Financial on or about April 1, 1977.

45.    On or about April 1, 1977, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Richard Rockwell signed a standard New England Financial Agent's Contract.

46.    Defendant David Sauers became affiliated with New England Financial on or about December 19, 1994.

47.    On or about December 19, 1994, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant David Sauers signed a standard New England Financial Agent's Contract.

48.    Defendant Stanley Szczerba became affiliated with New England Financial on or about July 30, 1982.

49.    On or about July 30, 1982, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Stanley Szczerba signed a standard New England Financial Agent's Contract.

50.    Defendant Marilou Szymanski became affiliated with New England Financial on or about July 8, 1996.

51.    On or about July 8, 1996, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Marilou Szymanski signed a standard New England Financial Agent's Contract.

52.     Defendant Kenneth Schleises became affiliated with New England Financial on or about May 1, 2002.

53.     On or about May 1, 2002, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Kenneth Schleises signed a standard New England Financial Agent's Contract.

54.     Defendant Aaron Turner became affiliated with New England Financial on or about September 18, 2000.

55.     On or about September 18, 2000, as a condition of and in consideration for, *inter alia*, his employment and training, Defendant Respondent Aaron Turner signed a standard New England Financial Agent's Contract.

56.     The Defendants' Contracts provided that during their affiliation with, and for a period of two years following their termination from New England Financial, they would not attempt to divert any business within a limited geographical area or contact any policyholders owning policies for which the Defendants were the agents of record for New England Financial.

57.     Specifically, the Defendants agreed that:

> for a period of two years after termination of the Contract, the Agent shall not, directly or indirectly, contact or contract with any agent of the General Agent [of New England Financial] or policyholders of the Company owning policies for which the Agent is the agent of record for the purpose of inducing any policyholder to lapse, cancel, fail to renew or replace any policy.

58.     The Defendants also agreed that:

> for a period of two years after termination of the Contract, the Agent shall not, directly or indirectly, contact or contract with any agent of the General Agent [of New England Financial] for the purpose of inducing such agent to solicit in the territory

of the General Agent on behalf of any other insurance company or financial services organization.

59.    The Defendants have also agreed to reimburse New England Financial its attorneys' fees and costs incurred in connection with any successful New England Financial action to enforce New England Financial's rights under the Contract.

60.    The Contracts executed by the Defendants are reasonable with respect to time and territory and was reasonably necessary for the protection of New England Financial's ability to maintain and retain its affiliated agents; maintain, retain, and service its affiliated agents and customers; and protect its ability to conduct business and remain competitive within a limited area.  A copy of New England Financial's Agency Contract is attached hereto and made a part of as Exhibit "A."

61.    The Contracts also contained a notice provision that specifically provided that the Defendants could terminate their contracts "at any time at will and without cause upon giving (30) days' notice in writing."  This notice provision was not subject to change, waiver, or modification absent a writing signed by New England Financial local and upper management.

62.    After signing their Contracts, the Defendants took full advantage of New England Financial's training programs and represented New England Financial as sales agents.

63.    Without providing the notice required by the Contract, Defendant Anthony Alfieri voluntarily terminated his affiliation with New England Financial on or about April 30, 2004.

64.    Without providing the notice required by the Contract, Defendant Jeff Bonifacino voluntarily terminated his affiliation with New England Financial on or about April 30, 2004.

65.    Without providing the notice required by the Contract, Defendant Laura Crean voluntarily terminated her affiliation with New England Financial on or about June 24, 2004.

66.    Without providing the notice required by the Contract, Defendant Richard Hewitt voluntarily terminated his affiliation with New England Financial on or about April 30, 2004.

67.    Without providing the notice required by the Contract, Defendant Robert Porter voluntarily terminated his affiliation with New England Financial on or about August 16, 2004.

68.    Without providing the notice required by the Contract, Defendant Richard Rockwell voluntarily terminated his affiliation with New England Financial on or about March 1, 2004.

69.    Without providing the notice required by the Contract, Defendant David Sauers voluntarily terminated his affiliation with New England Financial on or about April 30, 2004.

70.    Without providing the notice required by the Contract, Defendant Stanley Szczerba voluntarily terminated his affiliation with New England Financial on or about May 1, 2004.

71.    Without providing the notice required by the Contract, Defendant Marilou Szymanski voluntarily terminated her affiliation with New England Financial on or about April 30, 2004.

72.    Without providing the notice required by the Contract, Defendant Kenneth Schleises voluntarily terminated his affiliation with New England Financial on or about April 30, 2004.

73.    Without providing the notice required by the Contract, Defendant Aaron Turner voluntarily terminated his affiliation with New England Financial on or about April 30, 2004.

74.    While affiliated with New England Financial, the Defendants exercised independent discretion, had direct contact with New England Financial customers, and were intimately involved in the business of New England Financial, including detailed day-to-day dealings with a number of specific agents and customers.

75.    New England Financial's management has confirmed that after terminating their affiliations with New England Financial, the Defendants became employed by or affiliated with direct competitors of New England Financial.

76.    Plaintiffs believe and therefore aver that the Defendants, either alone or in concert with one another, have solicited, induced, and/or recruited others to terminate their affiliations with New England Financial without notice in favor of employment, in breach of their 30-day notice obligations.

77.    Plaintiffs believe and therefore aver that the Defendants, either alone or in concert with one another, have solicited, induced, and/or caused New England Financial's customers to replace their existing New England Financial policies with

policies from direct competitors of New England Financial in violation of the terms of the Defendants' Contracts with New England Financial.

78.    Plaintiffs believe and therefore aver that the Defendants have improperly removed the originals of New England Financial's confidential customer files from the New England Financial offices in violation of the terms of the Defendants' Contracts with New England Financial.

79.    Plaintiffs believe and therefore aver that the Defendants have improperly removed the confidential, proprietary, and non-public personally identifiable financial and other information concerning New England Financial customers from New England Financial offices in violation of the terms of the Defendants' Contracts with New England Financial.

80.    New England Financial is obligated by the SEC, NASD, and/or insurance rules and regulations, and/or the common law to maintain and retain the original files and documentation for each of its customers.

81.    Upon information and belief, the Defendants have improperly removed and retained laptop and/or desktop computers from New England Financial offices which were rightfully leased from New England Financial.

82.    Upon information and belief, these computers contain proprietary software and confidential customer information and the agents were required to return this equipment, software, and date upon the termination of their affiliations with New England Financial.

83.    New England Financial maintains a legitimate business interest in protecting its client base and confidential and proprietary information because the time

and effort expended by New England Financial in gathering and compiling the information, finding and cultivating affiliated agents and customers, and training its affiliated agents gives New England Financial a competitive advantage which would be lost through improper and unauthorized solicitation and disclosure.

84.     The limited restrictions contained in the Contracts signed by the Defendants were reasonably necessary to protect New England Financial's legitimate business interest in maintaining and protecting its existing customer relationships and competitive advantage in the industry.  Moreover, the respective time limitations and the geographic limitation in the Contracts made the Contracts inherently reasonable with respect to time and territory.

85.     The present and future actions of the Defendants, as set forth above, caused and will continue to cause New England Financial to suffer injury and harm by causing:  1) injury to office stability; 2) present and future economic loss; 3) disclosure of proprietary and confidential New England Financial business and customer information, including trade secrets; and 4) loss of goodwill and business reputation.

86.     It is critical that the Defendants, or any person acting on behalf of the Defendants, be prohibited from soliciting New England Financial affiliated agents and customers.

87.     Plaintiffs have no adequate remedy at law.

88.     Greater harm will result if the relief sought by Plaintiffs is not granted than if the relief is denied.

## FIRST COUNT
### (BREACH OF CONTRACT)

89.     Claimants incorporate paragraphs 1 through 88 as if fully set forth herein at length.

90.     The Agent Respondents executed Contracts with New England Financial prohibiting them from soliciting policyholders or sales agents.

91.     The Agent Respondents also executed contracts which required 30 days notice in writing before the contract would be terminated.

92.     The Agent Respondents breached their Contracts by soliciting Claimants' policyholders for the purpose of inducing the policyholders to lapse, cancel, fail to renew and/or replace their policies with New England Financial.

93.     The Agent Respondents breached their Contracts by terminating their affiliations with New England Financial without the requisite 30 days notice.

94.     The Agent Respondents' breaches have caused, and are continuing to cause, Claimants damages in amounts to be determined.

WHEREFORE, New England Financial respectfully requests an Order (1) enjoining the Defendants and any of their agents, employees or representatives from soliciting any of New England Financial's clients, policyholders, former policyholders, and any of New England Financials' prospective clients or business opportunities that Agent Respondents may have information or knowledge of because of their wrongful misappropriation of New England Financial's files, and (2) ordering Defendants to return all files, equipment, documents, software, confidential customer information, documentation and lists of all New England Financial's customers, desktops, and/or other

property Defendants misappropriated from New England Financial upon the wrongful

termination of their Contracts.


## SECOND COUNT
### (UNFAIR COMPETITION)

95.     Plaintiffs incorporate by reference paragraphs 1 through 94 as if fully set

forth at length herein.

96.     Throughout their affiliation with New England Financial, the Defendants

gained access to critically important, confidential information, and/or trade secrets

concerning New England Financial affiliated agents and customers.

97.     This information was not available to New England Financial's

competitors or the public at large, and the Defendants would not have had access to such

information but for their affiliation with New England Financial.

98.     Upon information and belief, the Defendants have and will misuse such

confidential information, and/or trade secrets, which they wrongfully retained from New

England Financial, to gain an unfair competitive advantage for themselves.

99.     The foregoing constitutes unfair competition by the Defendants, all to the

continuing and irreparable injury to New England Financial.

100.     The actions of the Defendants directed at New England

Financial's Wilmington, Delaware office represents a significant loss to New England

Financial and have enabled Defendants to gain an unfair competitive advantage over New

England Financial.

WHEREFORE, New England Financial demands that Agent Respondents be

enjoined from using any and all confidential information, trade secrets, proprietary

information or other information that the Agent Respondents wrongfully obtained from New England Financial in order to obtain an unfair competitive advantage over New England Financial.

## THIRD COUNT
### (BREACH OF FIDUCIARY DUTY)

101.    Plaintiffs incorporate by reference paragraphs 1 through 100 as if fully set forth at length herein.

102.    By virtue of the confidence and trust imposed by New England Financial in the Defendants, and the access they were provided to New England Financial's confidential, proprietary, and trade secret information, the Defendants were required to act solely in the interest of New England Financial, and to preserve and promote the business opportunities of New England Financial.  They also had a duty of utmost good faith and loyalty to New England Financial, and were obligated not to subvert or misappropriate New England Financial's assets, business, business opportunities, employees and customers, good will and trade secrets.

103.    The Defendants have breach, and continue to breach, their fiduciary duty and duty of loyalty owed to New England Financial.

104.    The Defendants breach of fiduciary duty and duty of loyalty has harmed and continues to harm New England Finanical.

105.    The Defendants have acted and continue to act willfully and wantonly with respect to their breach of fiduciary duty and duty of loyalty.

WHEREFORE, New England Financial demands that the Defendants be enjoined from any acts in furtherance of their breaches of fiduciary duty and loyalty to New England Financial.


## FOURTH COUNT
### (TORTIOUS INTERFERNCE WITH CONTRACTUAL RELATIONS)

106.    Claimants incorporate by reference paragraphs 1 through 105 as if fully set forth at length herein.

107.    New England Financial had contracts with the Defendants and its other agents, whom the Defendants solicited and induced and/or attempted to solicit or induce to terminate their affiliations with New England Financial without providing the required 30 days' notice to New England Financial.

108.    Upon information and belief, the Defendants knowingly and intentionally interfered with New England Financial's contractual relations with its affiliated agents, directly and/or indirectly, since their separation from New England Financial, and continue to do so.

109.    The Defendants' interference with New England Financial's contractual relationships with its affiliated agents has harmed and continues to harm New England Financial.

WHEREFORE, New England Financial demands that the Defendants be enjoined from interfering with any of New England Financial's contractual relations with any of its affiliated agents, customers, policyholders, and business relationships or opportunities and be prohibited from soliciting any of New England Financial affiliated agents and customers.

## FIFTH COUNT
### (CONVERSION)

110.    Plaintiffs incorporate by reference paragraphs 1 through 109 as if fully set forth at length herein.

111.    At all times material hereto, New England Financial was, and still is, entitled to the possession of its property, as alleged above.

112.    Upon information and belief, Defendants took and/or misappropriated New England Financial's property and converted it to their own use.

113.    Defendants' conduct as alleged herein has caused and will continue to cause irreparable injury to New England Financial for which New England Financial does not have an adequate remedy at law and has caused and will continue to cause New England Financial to incur monetary damages.

WHEREFORE, New England Financial demands that the Defendants be ordered to return to New England Financial all property including, but not limited to, all files, computer discs, or other items containing any information on New England Financial's clients or prospective clients.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Honorable Court to enter judgment in their favor and against Defendants by:

1.    Enforcing the non-solicitation provision of the Defendants' Contracts with New England Financial; the 30 days' notice provision of the Defendants' Contracts with New England Financial, and customer non-solicitation provision in the Contracts of the

Defendants, and their agents, employees, representatives, and any persons and entities acting in concert with them or on their behalf, refrain from soliciting New England Financial's affiliated agents, managers, and employees, improperly soliciting New England Financial's policyholders, and misappropriating New England Financial's confidential and proprietary information and trade secrets;

2.      Granting Plaintiffs final judgment against all Defendants for all actual and compensatory damages, together with pre-judgment interest, including, but not limited to, reimbursement to Plaintiffs for monies paid to the Defendants after their respective improper conduct without limitation, reimbursement of all commissions paid to each from the time they breached their respective Contracts, which provide that, in the event of such breach, all "claims for compensation or benefits or any other benefit…shall be forfeited and void";

3.      Granting Plaintiffs final judgment against the Defendants for punitive damages;

4.      Order the Defendants and their agents, employees, representatives, and any persons and entities acting in concert with them or on their behalf to disclose to Claimants the identity of any New England Financial customers whom the Defendants solicited for business or to whom they disclosed any confidential or proprietary information of Plaintiff;

5.      Order the Defendants to return all original files and all copies of files and other New England Financial property in their possession to New England Financial;

6.    Award Plaintiffs their reasonable costs, attorneys' fees, and other

expenses, pursuant to the relevant fee-shifting provisions in the parties contracts and any

other applicable statute or law; and

7.    Grant Plaintiffs such other and further relief this Honorable Court deems

just, proper, equitable and proper.




**DAVIS, BUCCO & ARDIZZI**




_____/S/_____
ROBERT ARDIZZI, ESQUIRE
PAUL A. BUCCO, ESQUIRE
TOM MCGOLDRICK, ESQUIRE
ATTORNEY FOR PLAINTIFFS



DATE:_____