# DAVIS, BUCCO & ARDIZZI

ATTORNEYS AT LAW          TEL: 302-345-9808
         robert.ardizzi@davisbucco.com

December 15, 2005

PENNSYLVANIA

NEW JERSEY     The Honorable Joseph J. Farnan, Jr.
    J. Caleb Boggs Federal Building
DELAWARE     844 N. King Street
    Room 2124
    Lockbox 27
    Wilmington, DE 19801

         RE: **New England Financial v. Anthony Alfieri, et al.**
               Docket No.: 05-CV-415

Dear Judge Farnan:

    This letter memorandum is being submitted pursuant to Your Honor's directions at the conclusion of the hearing held on November 29, 2005 relating to Plaintiffs' Petition to Enjoin directed to Defendant Richard Hewitt. Please note that although we requested a copy of the transcript from the hearing, we did not receive it in time to utilize it in the preparation of this memorandum.

    As a general rule, the imposition of a preliminary injunction requires proof of the following elements: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest. *Novozymes A/S v. Genencor Intern.,Inc.*, 2005 WL 2716496 (D.Del. 2005)(citing, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed.Cir.2001)).

    However, the disposition of the instant motion must also be guided by the fact that Defendant Richard Hewitt's conduct violated this Court's Consent Order entered on July 23, 2005. The Third Circuit has held that once a defendant has agreed to the terms of a consent order, he cannot challenge its validity. *American Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136 (3d. Cir. 1986) (citing, *Delaware Valley Citizens' Council For Clean Air v. Commonwealth*, 678 F.2d 470, 477 (3d Cir.), *cert. denied,*459 U.S. 969, 103 S.Ct. 298, 74 L.Ed.2d 280 (1982)). In *American Greetings*, the Third Circuit upheld a trial court's holding that the defendant violated a consent order by marketing a trademarked

product and that the defendant's violation of the order constituted contempt of court. <u>American Greetings Corp. v. Dan-Dee Imports, Inc.</u>, 807 F.2d at 1148 (3d. Cir. 1986). Therefore, the issue before this Court in deciding this motion is whether Richard Hewitt violated the terms of the consent order.

> Paragraph 1 of the consent order states as follows:
>
> Commencing on the date of this Order and continuing until two years from the dates the defendants terminated their respective relationships with plaintiffs (as more fully reflected in the attached exhibit A), the defendants shall not, directly or indirectly, contact the policyholders of the plaintiffs who own policies for which the defendants are the agent of record, for the purpose of inducing any such policyholders to lapse, cancel, fail to renew or replace any policy.

The Plaintiffs are entitled to the relief requested in the Motion to Enjoin if Richard Hewitt contacted Helen Jean Hewitt and Arthur Hewitt after the consent order was entered to induce them to lapse, cancel fail to renew or replace any New England policy.

A large portion of the necessary proof was provided by Richard Hewitt, himself. He admitted that he initiated the contact with Helen Jean Hewitt and Arthur Hewitt after the consent order was entered. This was confirmed by Plaintiffs' Exhibit "1", the analysis prepared by Richard Hewitt in August, 2005, only a day or two before a face-to-face meeting with Mr. & Mrs. Hewitt. Richard Hewitt also admitted that he never informed the Hewitts about the existence of the consent order or how his contact with them was limited by the order. He also admitted that he never asked them to sign an affidavit that he had not solicited them to cancel, lapse or replace their New England policies as provided for in the consent order.

Helen Jean Hewitt testified competently and credibly that Richard Hewitt contacted her and her husband after the date of the consent order and that during this contact Richard Hewitt solicited her to cash in the equity on her New England life insurance policies and place the money in an IRA account. In response to Your Honor's questions, Mrs. Hewitt testified that she did not initiate the contact with Mr. Hewitt and that she felt uncomfortable by Mr. Hewitt's solicitation. She also testified that Mr. Hewitt contacted her again after the meeting to see if she had made a decision about cashing in her New England policies.

The second contact is worthy of more discussion because Richard Hewitt testified that he typically contacted the Hewitts once a year to reevaluate their accounts. Having just seen them in August, there would have been no reason for Richard Hewitt to follow up with a phone call to the Hewitts in September, 2005 unless he was attempting to solicit business for his new company, Penn Mutual. Clearly, he was following up with the Hewitts to determine if they were willing to cash in surrender or lapse their New England policies to invest in an IRA. During cross-examination, Richard Hewitt had no explanation for why he made this attempt to contact the Hewitts and he had no explanation for why Helen Jean Hewitt would lie when she testified so clearly that he solicited her to cash in her New England policies to open an IRA account.

Throughout his testimony, Richard Hewitt attempted to portray himself as Good Samaritan who only contacted the Hewitts to make sure that their financial interests would be represented. However, nothing could be further from the truth. Richard Hewitt knew that Creative Financial Group would be taking over the New England accounts that his agency, Rockwell, had previously serviced. Therefore, he knew the Hewitts were going to have a new agent to service their accounts. Instead, he was hoping to persuade the Hewitts to lapse, replace or surrender their New England policies so that he could continue to keep them as clients. His actions were not humanitarian, as he would have the Court believe. They were actually calculated to sway the Hewitts away from New England and Creative Financial Group in favor of his new company, Penn Mutual. This was a direct violation of his Agent Contract with New England and, more importantly, the consent order entered in his matter on July 23, 2005. Because Richard Hewitt violated the consent order, the Plaintiffs are entitled to the relief requested in the instant motion. See, American Greetings Corp. v. Dan-Dee Imports, Inc., *supra*, 807 F.2d 1136, 1148 (3d. Cir. 1986).

Even if the Court is inclined to evaluate this case in terms of the general rule for granting a preliminary injunction, the evidence is compelling that the Plaintiffs' are entitled to the relief requested. At the outset, it must be noted that the Defendants, including Richard Hewitt, agreed that an injunction on an emergency basis was a proper remedy in the event of a violation of the consent order. Having agreed to the terms of the consent order, he cannot now contest the Plaintiffs' right to the relief available thereunder.

The Plaintiffs have shown that they are likely to succeed on the merits if the case proceeded to trial. Richard Hewitt blatantly violated the consent order and his Agent Contract by soliciting the Hewitts to cash in

the equity of their New England policies. The Plaintiffs have been irreparably harmed because money alone is insufficient to stop the potential damage to their business if the defendants are permitted to violate the consent order without repercussions. Granting the injunction will not impose any hardship on Richard Hewitt as he is already obligated by contract and the consent order to avoid all unauthorized solicitation of New England's customers. Finally, granting the injunction advances the public interest in having litigants obey the orders of the courts in this jurisdiction. Denying the injunction essentially allows Richard Hewitt to benefit from an intentional violation of this Court's prior order.

Based on the foregoing the Plaintiffs are entitled to sanctions against Richard Hewitt in a form and amount set by the Court. In the motion, Plaintiffs requested an order barring Richard Hewitt from any further contact with Helen Jean and Arthur Hewitt, awarding Plaintiffs their attorney's fees associated with this motion and ordering any additional sanctions the Court deemed just and equitable. At a minimum, the Plaintiffs are entitled to an award of their attorney's fees associated with investigating and litigating the proposed injunction against Richard Hewitt. A summary of those attorney's fees is attached hereto as Exhibit "A".

Respectfully submitted,

/s/ Robert D. Ardizzi
ROBERT D. ARDIZZI

\rda
cc: Wayne Marvel, Esquire (via electronic filing)