

**TRESSLER, SODERSTROM, MALONEY & PRIESS**
ATTORNEYS AT LAW

744 Broad Street
Suite 1510
Newark, NJ 07102
973/848-2900
Fax 973/623-0405
www.tsmp.com

Mark Robert Vespole
(973) 848-2909
mvespole@tsmp.com
Certified Civil Trial Attorney

December 19, 2005

**Via Electronic Filing**
The Hon. Joseph J. Farnan, Jr.
J. Caleb Boggs Federal Building
844 N. King Street
Room 4124
Wilmington, DE  19801

    Re:  New England Life Insurance Company v. Anthony Alfieri, et al.
        Docket No. 05-cv-415

Dear Judge Farnan:

    Please accept this reply letter brief and argument on behalf of defendant Richard Hewitt in response to plaintiffs' letter brief on its petition to either hold defendant Hewitt in contempt for violation of the July 25, 2005 Consent Order or seek an injunction modifying the Consent Order. We will separately address plaintiffs' factual and legal contentions.

## FACTUAL ARGUMENT

    Plaintiffs betray their true intentions with regard to this application in the very last paragraph of their December 15, 2005 letter when they state:

> In the motion, Plaintiffs requested an Order barring Richard Hewitt from any further contact with Helen and Arthur Hewitt…

    It is part of plaintiffs' misconception of both the Consent Order and the relevant provision of the Incentive Career Agent Contract that the defendants are somehow prohibited from either contacting New England clients in the first instance, or attempting to sell products to New England clients which do not involve the lapse, cancellation, failure to renew or replacement of any New England policy or contract. This misconception is evident in all of plaintiffs' papers submitted in connection with the instant petition, and has been personally conveyed to me on several occasions by plaintiffs' counsel Paul Bucco, Esq. It was undoubtedly this kind of distortion of the terms of contract and Consent Order that was communicated by plaintiffs or their representatives to Helen Hewitt, which caused her to come to Court with the preconceived notion that Richard Hewitt had done something wrong. If the Court barred Richard Hewitt from contacting Helen Hewitt, it would result in Richard Hewitt's breach of his professional

---

CHICAGO, ILLINOIS      BOLINGBROOK, ILLINOIS      WHEATON, ILLINOIS

ORANGE COUNTY, CALIFORNIA      LOS ANGELES, CALIFORNIA      NEW YORK, NEW YORK

The Hon. Joseph J. Farnan, Jr.
December 19, 2005
Page 2

obligations to Helen Hewitt, because defendants' exhibit 3 makes Richard Hewitt responsible for Helen Hewitt's IRA account.

In the second full paragraph on the second page of plaintiffs' December 15, 2005 letter to the Court, plaintiffs complain that Richard Hewitt never informed Helen and Arthur Hewitt of the Consent Order, and never asked them to sign an affidavit. First of all, a plain reading of the Consent Order makes clear that there is no requirement that the defendants notify New England policyholders of the Consent Order. Regarding the affidavit, paragraph 2 of the Consent Order clearly indicates that an affidavit need only be executed if any New England policyholders "request that any of the defendants replace one or more of plaintiffs' policies…". Helen Hewitt and Richard Hewitt clearly agree that they did not have a conversation about replacing any New England Life Insurance Company policies on August 24, 2005. (Tr. page 19, lines 8 to 21 & page 53, lines 21 to 23). In accordance with paragraph 2 of the Consent Order, Richard Hewitt correctly responded to the Court's inquiry on November 29, 2005 by stating his understanding of the order was that he did not need to obtain an affidavit from Helen Hewitt, because he was not going to take any action to replace New England business. (Tr. page 74, line 3 to page 75, line 14).

Finally, plaintiffs argue in the last paragraph on page 2 of their December 15, 2005 letter that Helen Hewitt's testimony about Richard Hewitt's solicitation to cash out all of the equity in their life insurance policies and put them into an IRA was credible. In addition to the reasons set forth in defendants' December 15, 2005 letter brief, it is also worthy of note that defendants' exhibit 5 from the hearing, which are Richard Hewitt's contemporaneous notes of his August 24, 2005 meeting with Helen and Arthur Hewitt, specifically indicate under item No. 2 that he rebalanced Arthur Hewitt's variable universal life policy with New England, and plaintiffs' confirmation number of that rebalancing is recorded in the notes. There should be no doubt that this rebalancing took place. The rebalancing of the investment accounts for Arthur Hewitt's variable universal life policy with New England is completely at odds with Helen Hewitt's suggestion that Richard Hewitt suggested that they liquidate the cash in all of their policies. There is no reference whatsoever in Richard Hewitt's notes to the cash values in Helen and Arthur Hewitt's whole life policies. Given that Richard Hewitt did not sell the two $25,000 New England whole life policies to Helen and Arthur Hewitt (Tr. page 2, line 15 to page 3, line 4 & page 34, lines 22-24), was never responsible for rebalancing any subaccounts in the whole life policies (Tr. page 56, line 22 to page 57, line 6), and never made any commissions or service fees relating to the whole life policies, it is doubtful that Richard Hewitt ever qualified as the "agent of record" for the whole life policies while he was affiliated with New England, which is a requirement for the invocation of both the prohibitions in his Incentive Career Agent Contract with New England and in the Consent Order.

The Hon. Joseph J. Farnan, Jr.
December 19, 2005
Page 3

## **LEGAL ARGUMENT**

Plaintiffs' letter brief correctly states the standard of review for issuance of a preliminary injunction. (Pls' Let. Br. at 1.) (citing *Novozymes A/S v. Genencor Intern., Inc.*, 2005 WL 2716496 (D.Del. 2005)). However, that standard does not apply in this case because a binding consent order already exists. If it were truly asking for a preliminary injunction, plaintiffs would be asking the court to issue an injunction ordering compliance with an injunction. Plaintiffs have the right to do so according to the terms of the decree. (Consent Order ¶ 4.) However, as the letter brief makes clear, plaintiffs actually seek two very different things: (1) sanctions and attorney fees for breach of an injunction; or (2) in the alternative, a unilateral modification of the consent decree to forbid any and all contact between defendants and their former clients. The first request for relief does not fit under the preliminary injunction standard, whereas the second request is wholly impermissible.

The first request shows plainly: both the petition and letter brief ask for sanctions and attorney fees, while the letter brief attaches a schedule of attorney fees. (Pls' Pet. for Inj. at 3, ¶¶ 4-5.); (Pls' Let. Br. at 4.); (Pls' Sched. of Att'y Fees.) In addition, the letter brief states that: "the issue before this Court in deciding this motion is whether Richard Hewitt violated the terms of the consent order". Defendants agree: as with any attempt to show contempt, plaintiffs must demonstrate breach or violation of the consent order before they are entitled to attorney fees or sanctions.

The second, improper request – a unilateral modification of the consent decree – is more obscure. The caption of the petition asks for a preliminary injunction, and the letter brief provides the correct standard for a preliminary injunction. Thus both documents suggest that plaintiff merely seeks a second preliminary injunction enforcing the terms of the first, i.e. the consent decree. Again, the consent decree allows plaintiff to seek this relief. (Consent Order ¶ 4.) Yet plaintiffs' filings, viewed together, disclose that plaintiffs actually seek to modify the consent decree. In the letter brief plaintiffs state their argument as follows: "Plaintiffs are entitled to the relief requested in the Motion to Enjoin if Richard Hewitt contacted Helen Jean Hewitt and Arthur Hewitt after the consent order was entered *to induce them to lapse, cancel, fail to renew or replace any New England policy.*" (emphasis added). (Pls' Let. Br. at 2.) Again, that is a correct statement on the issue of whether Hewitt breached, because it is a correct statement of the terms of the consent decree. Yet when one compares that issue statement to the requested injunctive relief, it becomes apparent that plaintiffs are actually seeking to modify the consent decree: "[Plaintiffs request an order] Enjoining Defendant Richard Hewitt from any further contact with Helen Jean Hewitt and Arthur Hewitt or any other existing clients of the Plaintiffs in accordance with the terms of his Agency Contract and the Consent Order." (Pls' Pet. for Inj. at 3, ¶ 1.) That requested relief wholly omits the qualifying language of the consent order: "Defendants shall not, directly or indirectly, contact the policyholders of the plaintiffs...

The Hon. Joseph J. Farnan, Jr.
December 19, 2005
Page 4

for the purpose of inducing any such policyholders to lapse, cancel, fail to renew or replace any policy". (Consent Order ¶ 1.)  Accordingly, plaintiffs' requested preliminary injunction seeks to narrow the consent order.

That request is improper.  As plaintiffs note in their letter brief, once a party has agreed to the terms of a consent order, he cannot challenge its validity.  (Pls' Let. Br. at 1.) (citing *American Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1148 (3d Cir. 1986)); *See also Reynolds v. Roberts,* 207 F.3d 1288, 1298-99 (11th Cir. 2000).  The decree allows the parties to seek supplemental injunctions to enforce the terms of the decree – although these are just forms of declaratory relief.  (Consent Order ¶ 1.); *See United States v. Microsoft Corp.,* 147 F.3d 935, 941-42 (D.C. Cir. 1998) (an injunction to enforce a pre-existing consent decree takes the form of declaratory relief, clarifying whether the decree prohibits certain conduct).  The decree does not allow one party to unilaterally narrow its scope.

Hewitt and all other defendants have agreed to abide by the terms of the consent decree and will continue to do so.  To that end, should the court wish to issue a second injunction mirroring the terms of the consent decree, defendants have no objection – indeed, plaintiffs have the right to do so under the terms of the decree.  One could read plaintiffs' petition as requesting that relief.  As the above quoted-language reflects, plaintiffs requested relief seeks an injunction enjoining contact "in accordance with the terms of his Agency Contract and the Consent Order." Plausibly, that language might incorporate the consent order's qualifying language, barring contact meant to induce lapse, cancellation, failure to renew or replacement.  However, that injunction, merely repeating the terms of the consent decree, would not by itself support an award of sanctions or fees – only breach of the decree would do so.

Defendants' letter brief outlined the reasoning of the 10th and District of Columbia Circuits when confronted with similarly structured motions for injunctive relief and sanctions based on an existing consent decree. *See Reynolds*, 207 F.3d at 1298-99; *Microsoft*, 147 F.3d at 941-43.  To briefly reiterate, those cases reasoned that contempt citations are the proper procedures for remedying the breach of a consent decree, while injunctive relief is appropriate (if at all) only to clarify or supplement the terms of the decree.

In addition, plaintiffs cite *American Greetings Corp. v. Dan-Dee Imports*, 807 F.2d 1136 (3d Cir. 1986) in support of their petition.  That case, although it does not extensively reason through the procedural quirks of these motions, affirms defendants' analysis *sub silentio*. Specifically, the Third Circuit in American Greetings was faced with three requests for relief: (1) the modification of a court-issued preliminary injunction ("the Nov. 1983 injunction"); (2) sanctions for violation of the Nov. 1983 injunction; and (3) sanctions for violation of a different order, a consent decree the parties agreed to observe while they litigated the requested modification of the injunction ("the Sept. 1984 decree").  *Id*. at 1138.  On the first issue, the court addressed defendant's request to modify the Nov. 1983 injunction – not the Sept. 1984

The Hon. Joseph J. Farnan, Jr.
December 19, 2005
Page 5

consent decree – because defendant asserted that the injunction was legally flawed, not because defendant was unsatisfied with the terms of the injunction. *Id*. at 1143-45 (district court's injunction not legally proper for trademark infringement under the Lanham Act). More importantly, as plaintiffs note in their letter brief, the *American Greetings* court flatly rejected the idea that the defendant could avoid or modify the Sept. 1984 consent decree, even though the court allowed the parties to contest the Nov. 1983 injunction. *Id*. at 1148. That makes perfect sense: consent decrees embody principles of contract and should be enforced as such, while litigated injunctions are, by their very nature, subject to continued dispute. *See Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir. 1999) (explaining that consent decrees are both contracts binding on the parties and enforceable court orders). On the second and third issues, the Third Circuit analyzed both requests for sanctions as citations for contempt – plaintiff was not entitled to relief unless it proved that defendant engaged in conduct "within the scope of" the consent decree. *American Greetings*, 807 F.2d at 1148-49. Accordingly, American Greetings implicitly supports defendants' argument: (1) plaintiffs' request for a injunction unilaterally modifying the consent decree is wholly inappropriate; and (2) the court should address plaintiffs' request for sanctions and attorney fees for alleged breach of the decree under the standard for contempt citations. The above-cited decisions of the Tenth and District of Columbia Circuits address these issues head-on, and also support defendants.

In summary, Hewitt and all other defendants have and will continue to abide by the consent decree, and a second order simply reiterating the binding terms of the decree would not trouble defendants. But defendants must object to plaintiffs' request for injunctive relief because it impermissibly seeks to unilaterally modify the consent decree, barring all contact with former clients.

With that confusion resolved, the sanctions issue arises: has Hewitt actually breached the terms of the decree? That issue exists wholly independent of plaintiffs' attempt to modify the injunction – it is resolved under a different legal standard and burden of proof than motions for preliminary or permanent injunctions.

*Harris v. City of Philadelphia,* 47 F.3d 1333, 1340 (3rd Cir. 1995) supplies that standard: plaintiff must prove, by clear and convincing evidence, that defendant violated the clear terms of a court order. *See also John T. v. Delaware County*, 318 F.3d 545, 552 (3d Cir. 2003). To determine whether a party has violated a consent decree, the court should first interpret the decree under the ordinary principles of contract interpretation, looking first to the terms of the decree itself, then extrinsic aids to resolve ambiguity. *See, e.g., Id.*; *United States v. State of New Jersey,* 194 F.3d 426 (3rd Cir. 1999). The court should then decide whether the evidence clearly and convincingly establishes the violation of an unambiguous portion of the decree. *Harris I*, 47 F.3d at 1340.

The Hon. Joseph J. Farnan, Jr.
December 19, 2005
Page 6

      Here – although plaintiffs wrongly seek to modify the terms of the decree – the parties already agree on the proper interpretation of those terms. Defendant Richard Hewitt has breached if Hewitt contacted Helen and Arthur Hewitt for the purpose of inducing them to lapse, cancel, fail to renew or replace any New England policy. (Consent Order ¶ 1); (Pl's Let. Br. at 2.). In the end, the only factual issue is whether Richard Hewitt contacted Helen and Arthur Hewitt with the intent of inducing them to lapse, cancel, fail to renew or replace any New England policy. Plaintiffs must prove this fact by clear and convincing evidence, or else they cannot prove breach of the consent decree and therefore cannot recover sanctions or attorney fees. Given irreconcilable conflicts between Helen Hewitt testimony and the documentary evidence as well as Richard Hewitt's testimony, the fact that Arthur Hewitt was never called by plaintiffs to support Helen Hewitt's recollection of the August 24, 2005 meeting and the fact that Helen Hewitt was poisoned against Richard Hewitt prior to the November 29, 2005 hearing, plaintiffs have satisfied neither the "preponderance of the evidence" nor the "clear and convincing" evidentiary standards.

      For all of the foregoing reasons, as well as those expressed in defendants' December 15, 2005 letter brief, the court should deny plaintiffs' petition for injunctive relief and sanctions for breach of the consent order.

                                           Respectfully submitted,

                                           */s/ Wayne A. Marvel (No. 1073)*

                                         MARK ROBERT VESPOLE
                                         WAYNE A. MARVEL

MRV:sas

cc:    Paul Bucco, Esq.
       Wayne Marvel, Esq.
Newark-#16751-v1